OPINION
 "THE TRIAL COURT COMMITTED PREJUDICIAL ERROR WHEN IT OVERRULED DEFENDANT-APPELLANT'S CRIM.R. 12(B)(3) MOTION TO SUPPRESS THE ADMISSION AS EVIDENCE AT TRIAL OF A CUSTODIAL CONFESSION OBTAINED WHILE INTOXICATED AND UNDER POLICE COERCION, SINCE THE WAIVER OF HIS MIRANDA
RIGHTS WAS NOT MADE, GIVEN THE TOTALITY OF THE CIRCUMSTANCES, VOLUNTARILY, KNOWINGLY, AND INTELLIGENTLY."
On September 7, 1996, two Bowling Green State University students, Julie Kane and Tara Fahringer, were in their home on Mourning Dove Drive in Bowling Green, Ohio. At approximately 10:45 p.m., the Bowling Green Police Department received a 9-1-1 call from that address reporting an unknown male in the residence.
Members of the Bowling Green Police Department were already in the area. Officer Carsey was patrolling by bicycle and was responding to Ms. Kane's 9-1-1 call. Just a few minutes before, he responded to an earlier call of a man who walked into a house two blocks from the Morning Dove address. One occupant reported the man appeared "intoxicated" and walked "sideways".
As he arrived at the Mourning Dove address, Officer Carsey saw Ms. Kane run out of the back door followed by appellant. Ms. Fahringer ran out of the front door. Carsey pursued appellant on his bicycle. At the suppression hearing, Carsey, who had been with the police for five and one-half years, was subpoenaed to testify on behalf of appellant. He stated he chased appellant for about two blocks before apprehending him. He saw appellant run without stumbling or staggering. Carsey said that compared to intoxicated people, appellant ran fairly well. Carsey testified that appellant occasionally paused to look which way to run next.
Carsey restrained appellant on the ground until Officer Adams arrived moments later to assist. Adams was also called as a defense witness. Both testified that defendant appeared to be intoxicated. Carsey testified he did not detect the odor of alcohol on appellant. He acknowledged he was out of breath from the chase and might not have noticed. Adams, a police officer for fourteen years, testified he detected the odor of alcohol about appellant when he handcuffed him. Adams read appellant his Miranda rights as he handcuffed appellant.
Appellant told both officers that a man had hit him in the face with a gun and he had a headache and head injury. Adams testified that as they placed appellant in the police cruiser, appellant was difficult to understand because he mumbled and slurred his speech. On cross-examination, Adams acknowledged that sometimes appellant mumbled and at other times spoke clearly. Carsey testified that appellant was unsteady on his feet, and the officers helped him walk to the police cruiser. Carsey acknowledged that appellant's demeanor was consistent with someone who was depressed at being arrested and/or someone faking an injury.
Officer Adams drove appellant to the hospital because of appellant's claimed head injury. Bowling Green Police Officer Tyson, who had one year of police experience, was already at the hospital on another matter when appellant arrived at approximately 11:00 p.m. He also testified at the suppression hearing on behalf of the defense. Both Officers Adams and Tyson testified that appellant was unsteady on his feet, did not walk in a straight line, and appeared intoxicated as they escorted him into the hospital's emergency room. Although Tyson did not smell alcohol on appellant's breath, he considered defendant to be more than moderately intoxicated.
Once inside, appellant slumped down in a chair and almost fell out of it. The officers placed appellant on a hospital bed with side rails. Officer Tyson testified that appellant appeared confused, asked why he was there, asked for "Marcie", and indicated his head hurt.
Several minutes later, both victims arrived at the emergency room. Ms. Kane was pronounced dead from a stab wound. Ms. Fahringer was treated for a facial wound.
A Bowling Green Police lieutenant ordered Adams to transport appellant to the police station. Adams did so even though appellant had not received medical attention. Although they observed smeared blood on appellant's arm and blood on his clothing, none of the officers who appellant subpoenaed saw any sign of a head injury through appellant's crew cut hairstyle.
Although the record is not always clear about precise times, appellant arrived at the police station at approximately midnight. Appellant was placed in an interview room. Adams stayed to observe the interview from outside the room for approximately one-half hour. Adams testified that appellant was less intoxicated, and his condition was better, than when Adams helped capture him almost two hours earlier. Adams testified appellant could walk on his own, but still appeared to be under the influence.
Investigator Helm of the Wood County Prosecutor's Office and Bowling Green Police Detective Sergeant Conner interviewed Baker beginning at approximately 12:25 a.m. Both testified on behalf of the prosecution at the hearing on the suppression motion.
When both men came into the interview room, appellant appeared to have fallen asleep with his head on the table. They helped appellant stand up to remove his handcuffs. Sergeant Conner testified that if they have a person stand up to remove handcuffs, they usually help the person to ensure their "feet are under them". Conner testified he smelled alcohol on appellant when he roused appellant and while sitting a foot or two from him during the interview.
The Sergeant also testified:
 "Q [W]ere there signs or symptoms about his appearance that lead you to believe that he was so intoxicated he could not understand what you were asking him?
 "A No, I felt that he understood what we were asking him."
The investigator testified during cross-examination that he knew appellant may have been under the influence of alcohol. He did not ask appellant how much alcohol he drank before administering Miranda warnings. The investigator sat three to four feet from appellant during the interview and did not detect alcohol on appellant.
Sergeant Conner read appellant his Miranda rights. When finished reading all the rights, he asked appellant if he understood them. Appellant said he understood them and he was willing to waive them. Appellant signed a written Miranda waiver at 12:27 a.m.
The police recorded the interview by using a microphone disguised as a pager. Although the defense played two brief portions of the tape recording at the suppression hearing to refresh recollection, the tapes were not admitted into evidence.[1] According to related testimony, Conner tried to focus appellant's attention during the Miranda waiver.
When questioned on cross-examination, the investigator testified:
 "Q. Now, during the course of what we heard on that tape, it would appear that [appellant] was having trouble maintaining his concentration. Is that true?
 "A. [Appellant's] answers were not necessarily quickly forthcoming throughout the interview. His demeanor and his tone sometimes changed. Even at the end of the interview after 3, 3 and a half hours, he was answering in a way that was very similar as he did at the start, which was subdued and quieter. And other times he would be more animated.
 "Q. I'm talking about his concentrating; ability to understand what was going on in that room. You heard, did you not, Detective Conner when attempting to have [appellant] sign the waiver of Miranda Rights say, if you would, and then stop crying, and he's trying to get his attention back? Did you hear that?
"A. I did.
 "Q. Okay. Is that a fair representation of what was occurring?
 "A. I don't know that it is. Because [appellant] kept his head down most of the time. And I think [the Sergeant] may have been wanting to make sure that he was not asleep; looking up and focussing on it. He kept his head down much of the interview, and did not make good eye contact throughout the entire interview."
The interviewers informed appellant at the beginning that he was accused of assaulting two women. They did not tell him one woman had died until three hours into the interview. The interview lasted for over three and one-half hours. However, appellant was permitted to use the restroom and offered water to drink during the interview.
Appellant told the interviewers he remembered he had traveled to Bowling Green to attend a party that night and recalled the party. He remembered the details of the police apprehending him. Appellant told the interviewers he could not remember what happened from the time he left the party until the time the police caught him.
Several times during the interview, appellant insisted he had consumed only three beers all night before leaving a party. The investigator testified he was concerned when appellant said he had consumed only three beers because witnesses had reported appellant appeared to be intoxicated. Given the gravity of the circumstances, the investigator thought appellant would want to be truthful about his alcohol consumption. According to the investigator, appellant's speech was nasal and congested in tone during the interview, and sometimes appellant acted more distracted than at other times. However, the investigator maintained that appellant appeared capable of understanding the questions even though his answers were not always "forthcoming". Appellant stood without difficulty so the officers could examine blood stains on his clothing.
Sergeant Conner also described appellant's demeanor during the interview. He testified that appellant had red eyes and was crying and emotional. He described appellant's speech as sometimes hard to understand and at other times, clear. According to Conner, appellant did not maintain good eye contact and usually kept his head down. Conner stated that he would have investigated further had he stopped the driver of an automobile in the same condition.
Appellant was indicted for aggravated murder, in violation of R.C. 2903.01, with a specification that it was committed during the offense of aggravated burglary. He was also indicted for two counts of aggravated burglary, in violation of R.C. 2911.11(A)(1), and one count of felonious assault, in violation of R.C. 2923.11.
The trial court denied appellant's motion to suppress. The matter proceeded to trial before a three-judge panel. The panel found appellant guilty of the lesser offense of murder on the first count and the lesser included offenses of burglary on the second and third counts. The panel found appellant guilty of felonious assault as charged in the fourth count of the indictment.
On appeal, appellant argues that he did not knowingly waive his privilege against self-incrimination and right to counsel because he was intoxicated, denied medical treatment, and coerced during more than three hours of interrogation. Appellant maintains that because he was intoxicated when arrested and questioned, he did not have the capacity to comprehend the nature of his right against self-incrimination and the consequences of waiving it. As a result, appellant claims his statements to police were not voluntary. Appellant contends that sufficient, competent, and credible evidence does not support the trial court's denial of his motion to suppress.
A confession that is not voluntarily made is not admissible at trial even if Miranda warnings were given before any statements were made. See Arizona v. Fulminante (1991),499 U.S. 279; State v. Fosnight (Feb. 14, 1997), Sandusky App. No. S-95-066, unreported. The state must prove that the accused voluntarily, knowingly, and intelligently waived those rights. SeeState v. Dailey (1990), 53 Ohio St.3d 88, 91; State v. McGrone
(Dec. 1, 1995), Lucas App. No. L-95-093, unreported.
At a suppression hearing, the state must prove the voluntariness of a confession by a preponderance of the evidence.State v. Hill (1992) 64 Ohio St.3d 313, 318. To rule on a suppression motion, the trial court must evaluate questions of fact and the credibility of witnesses. State v. Carter (1995),72 Ohio St.3d 545, 552 (1995) citing State v. Mills (1992),62 Ohio St.3d 357, 366.
To determine whether appellant's statements to police were voluntary, the trial court must examine the totality of the facts and circumstances surrounding the making of those statements, including age, mentality, prior criminal experience, length, intensity, and frequency of interrogation, existence of physical deprivation or mistreatment, and the existence of threat or inducement. State v. Brewer (1990), 48 Ohio St.3d 50, 58. Absent an error of law, an appellate court will not disturb a trial court's decision on a motion to suppress where a preponderance of substantial evidence supports the trial court's ruling. Maumee v. Johnson (1993), 90 Ohio App.3d 169, 171.
Coercive police activity is a necessary predicate to the finding that a confession is not voluntary within the meaning of the Due Process Claus. Colorado v. Connelly (1986), 479 U.S. 157,170 (absent police coercion, mentally ill defendant's statements were not involuntary, although they may be unreliable under the rules of evidence). The critical question is whether appellant's will to resist was overborne by coercive police conduct to produce a confession not freely self-determined. State v. Otte (1996),74 Ohio St.3d 555, 562; see State v. Dotson (Nov. 21, 1997), Clark App. No. 97-CA-0071, unreported (no coercion existed where defendant was coherent, responsive, and was willing to talk, even though police interviewers knew defendant had been drinking).
In a decision issued a month before the trial court entered its entry deciding on appellant's motion to suppress, the Supreme Court of Ohio found that evidence did not support a claim that heavy drug and alcohol intoxication, or police coercion, made a confession involuntary. The Court held:
 "Whether a statement was made voluntarily and whether an accused voluntarily, knowingly, and intelligently waived his right to counsel and right against self-incrimination are distinct issues. However both are measured by the `totality of circumstances' standard. * * * Evidence of police coercion or overreaching is necessary for a finding of involuntariness, and not simply evidence of a low mental aptitude of the interrogee. * * *" State v. Eley (1996), 77 Ohio St.3d 174, 178 (citations omitted).
Appellant implies police coercion existed because of an alleged lack of medical care, the length and time of the interview, and appellant's state of intoxication. The investigator denied that either he or Sergeant Conner said or did anything that could be perceived as threatening or trying to intimidate the defendant into giving a statement during the interview. They both testified they attended to appellant's physical needs by letting him use the restroom and supplying water and tissues.
The trial court found no officer observed any injury of any kind on appellant's head. Given appellant's hair style, such an injury would be easy to observe. Although the burden was on the prosecution at the suppression hearing, no evidence suggested that appellant in fact had a head injury, as he claimed, which required medical attention. The trial court's finding that appellant was not threatened or coerced, directly or by a lack of medical treatment, is supported by substantial evidence.
Appellant's interview lasted about three and one-half hours. It ended approximately five hours after his arrest. According to the interviewers, the interview lasted as long as it did because appellant claimed he could not remember what happened at the time Ms. Kane and Ms. Fahringer were stabbed.
The investigator testified:
 "* * * A. We were confident that Mr. Baker was the person responsible for the murder and felonious assault. And he did not admit that certainly initially and even in the end only partially acknowledged what we would consider an accurate version." * * *
 "A. His memory of the events in terms of why he had come to Bowling Green, where he was, who he was with, were very good. His memory regarding his apprehension was good. Yet there was an obvious gap between the time he left the party and when the police officer arrested him."
 "Q. Did that contribute to your desire to persist in the interview?
"A. Yes, it did.
 "Q. And can you describe again why that contributed to your desire to persist in the interview?
 "A. There was what we considered to be very substantial evidence indicating that he was the person responsible for the murder and the slashing of Tara's face. He obviously had no trouble remembering events surrounding that time period, yet refused to acknowledge the event itself, or said that he couldn't remember the event itself."
That memory lapse stood in sharp contrast to the detailed memory he had of events before the stabbings and after he was arrested. The trial court noted that despite the length of the interview, and despite appellant's sobbing and emotional distress, he never asked to terminate the interview. Substantial competent, credible evidence supports the trial court's conclusion that the length of the interview did not make appellant's waiver of rights or statements to police involuntary.
Substantial evidence supported the trial court's conclusion that appellant's intoxication did not produce an involuntary confession and that the police did not overreach or coerce appellant because of his intoxication. Investigator Helm freely admitted he was aware that appellant was under the influence before he started the interview. Based on what the investigator observed and knew, he stated he was surprised appellant continued to maintain he had consumed no more than three beers all evening. Sergeant Conner acknowledged he detected alcohol on appellant at the beginning of the interview. He stated that if he stopped someone in appellant's condition driving a car, he would have investigated further.
Substantial evidence suggests appellant had consumed alcohol that night. Five law enforcement officers either detected the odor of alcohol or observed behavior to conclude that appellant had been drinking and was under the influence of alcohol.
All this suggests that appellant was under the influence of alcohol as he claims. However, "The presence of alcohol will not, by itself, make a statement per se inadmissible." State v.Stewart (1991), 75 Ohio App.3d 141, 147 (citations omitted). "While the presence of drugs or alcohol should be considered, the amount must sufficiently impair the confessor's abilities to reason." Id.
None of the five witnesses testified appellant was so intoxicated that he was physically or mentally impaired or that his ability to reason was impaired. Several police officers conceded on cross-examination that appellant's behavior was consistent with someone faking a head injury or intoxication. While no witness denied that appellant's words were occasionally slurred and mumbled shortly after he was arrested and after the interview started, no testimony suggested that appellant was incoherent or confused.
While appellant makes much of the fact he was interviewed for over three and one-half hours, we believe this undermines appellant's argument that he was intoxicated during the interview. Adams testified that appellant appeared less intoxicated when the interview began, a little less than two hours after Adams arrested appellant. The effects of intoxication would continue to wear off after the interview began. Yet the evidence showed appellant behaved emotionally, kept his head down, and occasionally slurred his speech in the same way at the end of the interview as he did at the beginning.
According to testimony, appellant had a runny nose from crying so much. His speech tended to clear up whenever he blew his nose. Appellant stood up at least three times during the interview — to be uncuffed, to use the restroom, and to have his clothes removed as evidence. Appellant suggests that the fact an interviewer helped appellant stand up to uncuff him means appellant could not stand unassisted. However, no evidence showed appellant was unsteady on his feet due to alcohol when he stood up. We note that the trial court the opportunity to hear portions of the tape when appellant stood to be uncuffed which we cannot consider on appeal.
In addition, appellant signed a written waiver of hisMiranda rights. An express written or oral waiver is strong proof of the validity of that waiver, although it is not sufficient by itself to establish waiver. State v. Scott (1980),61 Ohio St.2d 155, at paragraph one of the syllabus.
Although appellant was under the influence of alcohol, substantial evidence supports the trial court's conclusion that appellant's ability to reason was not so impaired that his Miranda
waiver or his statements during the interview were involuntary. The trial court, in evaluating the evidence and credibility of witnesses, rejected appellant's version of the extent of his intoxication. As the trial court correctly concluded, the accused's ability to reason was not sufficiently impaired to make the interview coerced.
In considering the totality of these circumstances, the trial court concluded that appellant understood his constitutional rights, knowingly, voluntarily, and intelligently waived his rights, and voluntarily made statements while in police custody. We find this determination was supported by the evidence and not contrary to law.
Accordingly, appellant's sole assignment of error is not well-taken.
On consideration whereof, the judgment of the Wood County Court of Common Pleas is affirmed. Costs of this appeal are assessed to appellant.
JUDGMENT AFFIRMED.
 George M. Glasser, J.
 Melvin L. Resnick, J.
 James R. Sherck, J.
CONCUR.
[1] The tapes were admitted into evidence at the trial.