David M. BREWER, Petitioner–Appellant,

v.

Carl S. ANDERSON, Warden, Respondent–Appellee.

No. 00–4234.

United States Court of Appeals, Sixth Circuit.

Sept. 10, 2002.

Before NORRIS, DAUGHTREY, and GILMAN, Circuit Judges.

## OPINION

ALAN E. NORRIS, Circuit Judge.

Petitioner David M. Brewer appeals the district court's denial of his petition for a writ of habeas corpus, 28 U.S.C. § 2254. Petitioner was convicted of aggravated murder and sentenced to death by a three-judge panel in Greene County, Ohio. He raises three primary claims in his petition: (1) the admission of victim impact testimony violated the Eighth and Fourteenth Amendments; (2) the exclusion of letters containing mitigating statements about his character from the presentence report violated the Eighth and Fourteenth Amendments; and (3) he was denied effective assistance of counsel at the sentencing phase. For the reasons stated below we **affirm** the denial of the writ.

## I.

We begin with a summary of the events leading up to petitioner's conviction for aggravated murder quoted from the Ohio Supreme Court's opinion:

> At about 10:15 on the morning of Thursday, March 21, 1985, Sherry Byrne called her husband Joe and told him that she was going to the Red Carpet Inn in Sharonville, north of Cincinnati, to meet appellant, David Brewer, and his wife Kathy. Appellant and Joe were boyhood acquaintances and college fraternity brothers, and the two couples saw each other socially. According to Sherry, appellant and his wife were at the motel to celebrate Kathy's pregnancy, and to deliver a set of stereo speakers which appellant had promised Joe.
>
> Sherry and her dog arrived at the motel sometime before noon that morning. Appellant was there alone, having told his wife that he would be in Cincinnati for the day on business.

> Appellant and Sherry engaged in sexual intercourse. Appellant testified at trial that Sherry was a willing partner. However, he made statements to police officers suggesting that Sherry may not have been willing, or might have been intimidated by his size.
>
> According to appellant, Sherry expressed guilt about what had happened. They left the motel and drove in his car to a park "to talk about it." Sherry was upset and threatened to tell her husband. He put her in the trunk of his car because he "couldn't handle it" and because he "could not get her to calm down...." He maintained throughout that she voluntarily got into the trunk. He then drove to a less populated area north of Cincinnati where he opened the trunk and tried to convince Sherry not to tell her husband or his wife. He bound her feet with speaker wire, closed the trunk again, and drove to another location.

*State v. Brewer*, 48 Ohio St.3d 50, 549 N.E.2d 491, 493 (Ohio 1990).

Petitioner continued driving with the victim in his car for the rest of day, and at one point was questioned by the Beavercreek police:

> Appellant returned to Remco [where he worked as a manager] at about 8:00 and called the Beavercreek police. He spoke with Sergeant Richardson, who told him to come to the station that night and bring his car. Appellant said he would be there in about a half hour. Appellant stayed at Remco for about ten minutes, then left in his car. He stopped a short distance away and opened the trunk to tell Sherry he would let her go in a remote area. Appellant then went back to the Factory Road area.
>
> When appellant opened the trunk, he claimed that Sherry got out, slapped

him, and ran. Appellant caught her and choked her, first with his hands and then with a necktie. Appellant went back to his car and got a butcher knife. He stabbed Sherry several times, then slashed her throat.

Leaving Sherry's body in a roadside ditch, appellant drove to the Beavercreek police station. He went into a restroom to wash blood from his shoes and hands. He then spoke with the officers, who asked about the "HELP" sign that had been seen sticking out of his trunk. Appellant said he had picked up a female hitchhiker, and had been riding around with her. He explained the sign as a prank suggested by the hitchhiker, whom he said he could not identify. The Beavercreek police cited appellant for inducing panic and released him.

Appellant returned to the Factory Road area and placed Sherry's body in the trunk of his car. He stopped by Remco to call his wife, telling her he would be home soon. He then went home and went to bed.

*Id.* at 494.

The following Monday petitioner was brought in for questioning by the Springdale police, and after lengthy questioning, he confessed to murdering Sherry Byrne.

The district court's opinion and order provides a summary of the procedural history leading up to its denial of petitioner's habeas petition:

On March 28, 1985, a grand jury in Greene County, Ohio indicted Brewer on one count of aggravated murder during the commission of a kidnaping, Ohio Rev.Code § 2903.01(B), and one count of aggravated murder with prior calculation and design, Ohio Rev.Code § 2903.01(A). Each count carried aggravating circumstance specifications for commission of the offense while committing or attempting to commit kidnaping, Ohio Rev.Code § 2929.04(a)(7), as well as for commission of the offense in order to escape detection, apprehension, trial or punishment for another offense, Ohio Rev.Code § 2929.04(A)(3).

. . . .

On June 28, 1985, Brewer waived his right to a jury and elected to be tried by a three-judge panel. On September 19, 1985, he was found guilty on both counts and all specifications.

The following events occurred at the sentencing hearing and form the basis of several of the issues presented by petitioner:

At an October 16, 1985 mitigation and sentencing hearing, Brewer introduced testimony from a psychiatrist, Dr. Arthur Schramm, indicating that Brewer suffered from a "bipolar affective disorder," or "manic depressive psychosis." Dr. Schramm opined that Brewer was in a manic state throughout the events surrounding Sherry Byrne's death, meaning that he "was able to appreciate the nature of his actions but was not able to govern or control his behavior or his actions." On cross-examination, Dr. Schramm acknowledged limited familiarity with certain details of the crime, but nevertheless stood by his diagnosis.

. . . .

The court received into evidence a presentence investigation report prepared by the Greene County Adult Probation Department. Although letters from several people were attached to the report, counsel agreed that all except that of the victim's husband, Joe Byrne, should be excluded as hearsay. Mr. Byrne's letter was admitted into evidence "in lieu of [his] making a verbal statement" in open court. The report's

conclusion also was stricken by agreement of counsel.

The three-judge panel found that the prosecution had proved the aggravating circumstances on both counts beyond a reasonable doubt. Although the court found that Brewer's lack of significant criminal history and his hardworking character were mitigating factors, the court chose not to accept Dr. Schramm's diagnosis. Rather, the court found that appellant "did not lack the substantial capacity to appreciate the criminality of his conduct or [to] conform his conduct to the requirements of the law."

*Brewer v. Anderson,* C–1–96–626 at 5–6 (S.D.Ohio Sept. 7, 2000) (citations omitted).

Petitioner's direct appeal of his conviction was upheld by the Ohio Court of Appeals for the Second District and the Ohio Supreme Court. The United States Supreme Court denied a petition for certiorari.

Following the denial of his two post-conviction petitions in state court, petitioner filed this petition for a writ of habeas corpus in the district court, alleging thirty-seven claims in support of his petition. The district court denied all of petitioner's claims.

## II.

*Standard of Review*

We review the district court's legal conclusions de novo and its findings of fact for clear error. *See Seymour v. Walker,* 224 F.3d 542, 549 (6th Cir.2000). Petitioner's habeas petition was filed after April 24, 1996, the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), and that act prescribes the appropriate standard of review. *See id.* The AEDPA provides that a writ of habeas corpus may not issue unless the state court proceedings:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d). When assessing a state court's application of federal law, this standard requires a court to determine whether the state court decision is "objectively reasonable." *Washington v. Hofbauer,* 228 F.3d 689, 698 (6th Cir.2000) (citing *Williams v. Taylor,* 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)). In order to grant the writ, a federal court must find that "viewed objectively, the state court has correctly identified the governing legal principle from the Supreme Court's decisions but unreasonably applied that principle to the facts of the prisoner's case." *Id.* (internal quotations and citations omitted).

*Victim Impact Statements*

Petitioner contends that the inclusion of several letters in the presentence report resulted in an unfair sentencing procedure and was contrary to *Booth v. Maryland,* 482 U.S. 496, 107 S.Ct. 2529, 96 L.Ed.2d 440 (1987), in which the Supreme Court held that the admission of a victim impact statement at the sentencing phase of a jury trial in a capital case violated the Eighth Amendment. *Id.* at 508–09.

On direct appeal, the Ohio Supreme Court rejected this claim, reasoning that *Booth* does not apply to situations where a defendant is tried by a three-judge panel rather than a jury. *Brewer,* 549 N.E.2d at 497 (citing *State v. Post,* 32 Ohio St.3d 380, 513 N.E.2d 754 (Ohio 1987)). In *Post* the Court held that "[a]bsent an indication that the panel was influenced by or consid-

ered the victim impact evidence in arriving at its sentencing decision, the admission of the victim impact statement ... did not constitute prejudicial error." 513 N.E.2d at 759. The Court in the instant case determined that there was no indication that the three-judge panel considered the victim impact statement and rejected petitioner's claim accordingly. *Brewer*, 549 N.E.2d at 497.

■ The district court determined that this decision was not contrary to clearly established federal law, because in *Payne v. Tennessee*, 501 U.S. 808, 827, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991), the United States Supreme Court partially reversed *Booth* and held that there is no *per se* rule barring the presentation of victim impact statements at a capital sentencing proceeding.

The parties dispute whether the district court was correct to apply *Payne* to its analysis of this issue and also whether it interpreted *Payne* correctly. We hold that the Ohio Supreme Court's conclusion that *Booth* is inapplicable to three-judge panels is not unreasonable. Therefore, it is unnecessary to reach the question of whether *Payne* applies in this case. In following its earlier precedent that *Booth* does not apply to bench trials, the Ohio Supreme Court observed that "the usual presumption that in a bench trial in a criminal case the court considered only the relevant, material, and competent evidence in arriving at its judgment," *Brewer*, 549 N.E.2d at 497 (quoting *State v. White*, 15 Ohio St.2d 146, 239 N.E.2d 65, 70 (Ohio 1968)), and, in light of this presumption, held that the admission of a victim impact statement is prejudicial error only if there is an indication that the panel was influenced by or considered it in reaching its decision. *Id.* (quoting *Post*, 513 N.E.2d at 759).

Because the Ohio Supreme Court correctly identified *Booth* as the relevant United States Supreme Court precedent governing this issue, the question is whether its interpretation represents an unreasonable application of *Booth*. *See Williams v. Taylor*, 529 U.S. 362, 410, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). The Supreme Court clarified in *Williams* that this standard is a deferential one and stated that "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Id.* (emphasis original). The Ohio Supreme Court's determination that *Booth* does not apply to bench trials rests on the reasonable factual distinction that *Booth* was concerned specifically with the inflammatory effect that these types of statements might have on a jury and the legal presumption that judges take into account only relevant and competent evidence. This distinction is a reasonable one.

The Court then went on to find that there was no indication that the panel relied on the statements in the Joseph Byrne letter. *Brewer*, 549 N.E.2d at 497. As the district court correctly stated, this is a factual finding that is presumed to be correct under the AEDPA. 28 U.S.C. § 2254(e)(1). Petitioner has failed to clearly demonstrate that the Court's conclusion that the panel was not influenced by the statements is incorrect as required under the AEDPA.

*Mitigation Letters*

Petitioner's second claim is that he was denied a fair sentencing hearing because numerous letters attesting to his good character were excluded from the presentence investigation report by agreement of the parties. Petitioner's counsel agreed with the state that these letters constituted hearsay and were inadmissible.

Petitioner raised this claim in his state post-conviction proceedings, and the Ohio

Second District Court of Appeals held that these letters were properly excluded as hearsay, and that, even if it had been error to exclude them, that error was invited by defense counsel. In addition, the court held that there was no prejudice to petitioner from their exclusion because the contents were summarized in the body of the presentence report.

In determining that the letters were properly excluded, the court of appeals discussed *Green v. Georgia*, 442 U.S. 95, 99 S.Ct. 2150, 60 L.Ed.2d 738 (1979), in which the Supreme Court held that the exclusion of mitigating evidence on the basis that it violates a state hearsay rule may constitute a violation of due process where the excluded testimony is highly relevant to a critical issue in the punishment phase of the trial and there are substantial reasons to assume its reliability. *Green*, 442 U.S. at 97. The state court concluded that the excluded letters failed this test because they were redundant and contained no guaranties of trustworthiness.

The district court noted that the situation at issue in *Green*, where the court excluded evidence that was directly relevant to the petitioner's guilt, is significantly different from the situation in this case where the court merely excluded additional mitigating character evidence. Therefore, the district court held that the state court's conclusion that the exclusion of this evidence did not violate *Green* was not contrary to federal law. We find the district court's analysis of this question persuasive and hold that the state court's interpretation of *Green* is reasonable.

*Ineffective Assistance of Counsel*

Petitioner's final claim is that he was denied effective assistance of counsel at the sentencing phase. Petitioner raised several distinct claims with respect to this issue in state court, and the district court

granted a certificate of appealability with respect to four of these claims: counsel was ineffective for (1) failing to object to duplicative convictions and death specifications; (2) failing to object to the admission of Joseph Byrne's statement; (3) stipulating to the exclusion of additional mitigating letters as hearsay; and (4) failing to investigate adequately other potential mitigating evidence and to present an adequate defense.

In assessing an ineffective assistance claim, we apply the familiar two-prong test of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984): "First, the defendant must show that counsel's performance was deficient.... Second, the defendant must show that the deficient performance prejudiced the defense." 466 U.S. at 687.

In its most recent ruling on this issue, the Court explained the burden faced by a defendant attempting to gain habeas relief on an ineffectiveness claim:

> to succeed, however, [a defendant] must do more than show that he would have satisfied *Strickland's* test if his claim were being analyzed in the first instance .... Rather, he must show that the [state court] applied *Strickland* to the facts of his case in an objectively unreasonable manner.

*Bell v. Cone*, —— U.S. ——, 122 S.Ct. 1843, 1852, 152 L.Ed.2d 914 (2002).

The Ohio Supreme Court applied the *Strickland* test, and determined that petitioner had failed to establish either prong of it. *Brewer*, 549 N.E.2d at 504. With respect to counsel's failure to object to the admission of Joseph Byrne's statement and stipulation to the exclusion of the other mitigating letters, our rejection of plaintiff's direct claims on these issues necessarily means that petitioner cannot show that he was prejudiced by them. With

respect to the remaining two claims, petitioner has failed to demonstrate that he was in any way prejudiced by these potential errors. Accordingly, we hold that the Ohio Supreme Court's application of *Strickland* is not objectively unreasonable.

### III.

The district court's denial of the writ of habeas corpus is **affirmed**.