OPINION
James R. Taylor, Sr. appeals from two judgments of the Greene County Court of Common Pleas which denied his petition for post-conviction relief and his Civ.R. 60(B) motion for relief from judgment.
The record reveals the following evidence. On February 14, 1998, Taylor went to a dance at the Eagles Lodge in Fairborn, Ohio. His estranged wife also attended the dance. Taylor approached his estranged wife while she was sitting with some of her friends, including Carolyn and Ron Rihm and Jim Tipton. Taylor pulled out a handgun and fired at his wife, missing her. He then fatally shot Carolyn and Ron Rihm. Jim Tipton then grabbed the arm in which Taylor held the gun and deflected it as Taylor shot again. Taylor's deflected shot hit Tipton's upper arm and wounded him. Taylor was eventually subdued by others at the scene.
Taylor denied that he had intended to kill anyone. Instead, he claimed that he had gone to the dance with the intention to commit suicide. He stated that a struggle with bystanders had caused his gun to discharge.
On February 20, 1998, Taylor was indicted for one count of attempted aggravated murder, two counts of aggravated murder, and one count of attempted murder, with each count containing a firearm specification and the counts of aggravated murder containing death specifications. The trial court appointed attorneys John Butz and David Miles to represent Taylor.
A trial date was set for May 18, 1998. Taylor's attorneys filed motions to suppress on May 5 and 6, 1998. During a May 13, 1998 hearing, the trial court indicated that, due to the motions to suppress, the May 18, 1998 trial date would be continued. Taylor then personally stated that he objected to a continuance and informed the trial court that he wished to discharge his attorneys and to represent himself in court. The court did not rule on his objection at that time, but did order a competency evaluation of him. Following the evaluation and two hearings, the court found that Taylor was competent to stand trial and that he had knowingly, voluntarily, and intelligently waived his right to counsel.
On February 8, 1999, a jury trial began. During the trial, Taylor acted as his own counsel and Butz and Miles acted as Taylor's standby counsel by order of the court. On February 24, 1999, the jury found Taylor guilty of all of the counts and specifications in the indictment. During the sentencing phase of the trial, Butz and Miles represented Taylor. At the conclusion of the sentencing phase, the jury recommended a sentence of death. The trial court sentenced Taylor to death on April 6, 1999. Taylor's direct appeal of his conviction is currently pending before the supreme court as case number 99-972.
On February 22, 2000, Taylor filed a petition for post-conviction relief and a motion for an evidentiary hearing. The trial court denied both motions on July 24, 2000. Taylor filed a notice of appeal of that judgment on August 21, 2000 which was designated Greene App. No. 2000CA0077. On September 14, 2000, Taylor filed a motion for relief from judgment relating to the trial court's July 24, 2000 decision. The trial court overruled that motion on October 26, 2000. Taylor filed a notice of appeal of that judgment on November 2, 2000 and that appeal was designated Greene App. No. 2000CA0103. On November 14, 2000, we granted Taylor's request to consolidate his two appeals pending before our court. Taylor now raises four assignments of error. He is represented by an attorney in this appeal.
 I. OHIO'S POST[-]CONVICTION PROCEDURES NEITHER AFFORD AN ADEQUATE CORRECTIVE PROCESS NOR COMPLY WITH DUE PROCESS AND EQUAL PROTECTION UNDER THE FOURTEENTH AMENDMENT.
Taylor argues that Ohio's post-conviction procedures are unconstitutional because they deny a petitioner the benefit of discovery before requiring him to file evidentiary documents outside of the record to support his claims.
State post-conviction review is not a constitutional right. State v. Kinley (1999), 136 Ohio App.3d 1, 7, 735 N.E.2d 921, 926, dismissed (2000), 88 Ohio St.3d 1444, 725 N.E.2d 284 (citation omitted). Thus, a petitioner for post-conviction relief receives no more rights than those granted by the post-conviction relief statute, R.C. 2953.21. Id., citing State v. Calhoun (1999), 86 Ohio St.3d 279, 281, 714 N.E.2d 905, 909. Although R.C. 2953.21 does not grant a petitioner the right to conduct discovery, the statute is not unconstitutional because a defendant has no constitutional right to state post-conviction relief generally.
The first assignment of error is overruled.
 II. THE TRIAL COURT ERRED BY DISMISSING APPELLANT'S POST[-]CONVICTION PETITION, WHERE HE PRESENTED SUFFICIENT OPERATIVE FACTS AND SUPPORTING EXHIBITS TO MERIT AN EVIDENTIARY HEARING AND DISCOVERY.
Taylor argues that the trial court erred when it denied his petition for post-conviction relief because his petition raised constitutional issues and provided sufficient operative facts outside of the record to require an evidentiary hearing.
The trial court denied Taylor's motion, concluding summarily that Taylor's claims failed to set forth operative facts demonstrating a constitutional deprivation and that most of his claims either were or could have been raised at trial or can be raised on direct appeal.
R.C. 2953.21 states, in part:
 (A)(1) Any person who has been convicted of a criminal offense * * * and who claims that there was such a denial or infringement of the person's rights as to render the judgment void or voidable under the Ohio Constitution or the Constitution of the United States may file a petition in the court that imposed sentence, stating the grounds for relief relied upon, and asking the court to vacate or set aside the judgment or sentence or to grant other appropriate relief. The petitioner may file a supporting affidavit and other documentary evidence in support of the claims for relief.
* * *
 (C) * * * Before granting a hearing on a petition filed under division (A) of this section, the court shall determine whether there are substantive grounds for relief. In making such a determination, the court shall consider, in addition to the petition, the supporting affidavits, and the documentary evidence, all the files and records pertaining to the proceedings against the petitioner, including, but not limited to, the indictment, the court's journal entries, the journalized records of the clerk of the court, and the court reporter's transcript. * * * If the court dismisses the petition, it shall make and file findings of fact and conclusions of law with respect to such dismissal.
* * *
 (E) Unless the petition and the files and records of the case show the petitioner is not entitled to relief, the court shall proceed to a prompt hearing on the issues even if a direct appeal of the case is pending. * * *
* * *
 (G) If the court does not find grounds for granting relief, it shall make and file findings of fact and conclusions of law and shall enter judgment denying relief on the petition. * * *
Pursuant to this statute, a defendant who challenges his conviction through a petition for post-conviction relief is not automatically entitled to a hearing. Calhoun, 86 Ohio St.3d at 282,714 N.E.2d at 910. Before the trial court grants an evidentiary hearing on the defendant's petition, it must determine whether there are substantive grounds for relief. Id. at 282-283, 714 N.E.2d at 910. There are substantive grounds for relief if "there are grounds to believe that `there was such a denial or infringement of the person's rights as to render the judgment void or voidable under the Ohio Constitution or the Constitution of the United States.'" Id. at 283, 714 N.E.2d at 910, quoting R.C. 2953.21(A)(1). The supreme court has held that before an evidentiary hearing is granted, the petitioner bears the initial burden to submit evidentiary documents containing sufficient operative facts to demonstrate the denial or infringement of his rights. Id.
The supreme court has also held that a trial court may dismiss a defendant's petition without a hearing where the doctrine of res judicata applies. State v. Lawson (1995), 103 Ohio App.3d 307, 313, 659 N.E.2d 362,366, citing State v. Perry (1967), 10 Ohio St.2d 175, 226 N.E.2d 104, paragraph nine of the syllabus. "Under the doctrine of res judicata, a final judgment of conviction bars a convicted defendant who was represented by counsel from raising and litigating in any proceeding except an appeal from judgment, any defense or any claimed lack of due process that was raised or could have been raised by the defendant at the trial, which resulted in that judgment or conviction, or on an appeal from that judgment."[1] (Emphasis deleted.) Perry, supra, paragraph nine of the syllabus.
In his petition for post-conviction relief, Taylor asserted fifteen claims of relief. Because we must determine whether Taylor submitted evidentiary documents containing sufficient operative facts outside of the record to demonstrate that he had suffered a denial or infringement of his constitutional rights, we will begin by reviewing the documents that he attached to his petition for post-conviction relief. After discussing the documents, we will review the claims in his petition.
The first document attached to Taylor's petition was an affidavit from Richard J. Vickers. The affidavit stated that Vickers was an attorney in the death penalty division of the Public Defender's Office who had participated in numerous capital cases at all stages of litigation. In this affidavit, he summarized all the steps and procedures that the Public Defender's Office follows when preparing a petition for post-conviction relief.
The second document attached to Taylor's petition was another affidavit from Vickers. This affidavit stated as follows. In his duties with the Public Defender's Office, he and Kort Gatterdam met with Taylor in August 1998 to discuss Taylor's decision to represent himself at his trial. During their meeting, Taylor "appeared emotionally distraught and frequently wept[.]" Taylor's comments and behaviors caused Vickers to believe that Taylor was not capable of representing himself for two reasons: his comments revealed that he had no understanding of the legal process and his comments were irrational. Taylor seemed to think that the court would allow him to introduce any evidence or argument, regardless of its relevance. Taylor seemed to view the trial as a way to publicly humiliate his ex-wife and also as a way to show her that he still loved her and to facilitate their reconciliation. Taylor's depiction of the events of the crime had "no basis in reality." Taylor told Vickers that he could handle representing himself, that God would take care of him at trial, and that the case would "`turn out ok.'" Based upon Vickers' thirteen years of capital case experience, he believed Taylor was incompetent.
The third document attached to Taylor's petition was an affidavit from John R. Butz, which stated as follows. Butz was the lead trial counsel appointed to represent Taylor. After he was appointed to represent Taylor, it became apparent to him that Taylor was not processing his advice and that he was not competent to stand trial. Butz attempted to consult with and advise Taylor on many occasions in off-record settings. Butz had represented many clients accused of serious felony offenses, including other clients accused of capital aggravated murder. Based upon Butz's training and experience, he knew the difference between a client who was merely stubborn and who rejected his advice after rationally considering it and a client, like Taylor, who was incapable of rationally considering his advice and aiding in his defense. He stated that the difference between those two types of clients became apparent to him when a client, like Taylor, was unable to articulate an understanding of what Butz had told him. Butz concluded that in his opinion, Taylor was not competent to stand trial or to represent himself.
The fourth document attached to Taylor's petition was Taylor's own affidavit, which stated as follows. After "things" happened with his appointed attorneys, Taylor asked the court for new attorneys. When the court denied his request, Taylor asked the court to allow him to question certain witnesses while the appointed attorneys handled the rest of the trial. The trial judge refused that request, so Taylor "felt forced" to ask to represent himself because he did not trust his appointed attorneys to handle his entire case. Taylor did not trust his appointed attorneys because: although they had originally promised him that if he agreed to a continuance in his criminal case, they would assure that his divorce case was also continued, they later told him that they would not attempt to continue his divorce case; they disagreed with him about whether he should testify; and one of them told him something that led him to believe that his attorneys had the "power" to stop him from testifying at his trial.
Taylor's affidavit continued that, while he was in jail, he had attempted to prepare his case. His efforts were hampered, however, by certain deputies at the jail who harassed him daily by interrupting him, telling him he would lose, and making other aggravating comments. The conditions in jail were frequently so bad that he could not concentrate. On many days, he stayed in bed under blankets and wore socks on his hands for warmth.
The fifth group of documents attached to Taylor's petition were copies of newspaper articles written about the trial. The articles discussed the trial events and Taylor's actions during the trial. Some articles included a picture that displayed Taylor defending himself with the judge in the background looking frustrated.
The sixth group of documents attached to Taylor's petition was copies of "Results of Pre-Trial Conference" reports. The reports indicated that Taylor was charged with domestic violence in October 1995 and November 1995. In both reports, there were notes which indicated that Taylor's wife had wanted to drop the charges against him.
The seventh document attached to Taylor's petition was an affidavit from Kort Gatterdam, which stated as follows. He was an attorney in the trial section of the Public Defender's Office. He had several contacts with Butz, Miles, and Taylor between June 22, 1998 and January 28, 1999. During a January 28, 1999 meeting with Taylor, Taylor told Gatterdam that whatever happened would be God's will, that God had told him to write five to six pages of what God said, that God had a reason for him going to trial, that he had not taken the plea because God had not told him to do so, and that he wanted death. Taylor complained about his inability to sleep and the bad food in jail. He told Gatterdam that the world was coming to an end, probably within the next ten to twenty years, and warned Gatterdam that he should be prepared. Based upon his experience, Gatterdam concluded that Taylor was not competent.
The eighth document attached to Taylor's petition was an affidavit from J. Joseph Bodine, Jr., which stated as follows. He was an attorney in the federal habeas unit of the death penalty division of the Public Defender's Office. Between 1981 and January 27, 2000, 212 individuals sentenced to death had filed post-conviction petitions in Ohio. Of those petitions, relief was granted in only 1 case, 184 of the petitions were denied, and 28 were pending. He concluded that death sentenced individuals have a less than one percent chance of obtaining relief and also have little opportunity to obtain factual development to demonstrate their need for relief because Ohio courts have "created roadblocks" to prevent defendants from receiving an evidentiary hearing.
We now review the claims raised in Taylor's petition. In his fifteen claims, Taylor raised many repetitive arguments. As we review his claims, we will consider related claims together and we will address his repetitive arguments only once. In our analysis, we must determine whether the claims can be raised on direct appeal and, if not, whether Taylor submitted to the trial court evidentiary documents containing sufficient operative facts outside of the record to demonstrate a denial or infringement of his constitutional rights.
In his first and second claims, Taylor alleged that his conviction was void because he was incompetent and unable to execute a knowing, intelligent, and voluntary waiver of his right to counsel. He argued that even if he was found competent at the pre-trial hearing, the trial court had had a duty to convene a second competency hearing once it was presented with new evidence that raised a bona fide doubt about his competency during a subsequent stage of the trial. He also argued that there were indications of his incompetence during the trial proceedings, such as his psychologist's testimony that he was not competent. He claimed that the state psychologist misapplied the standard governing an insanity evaluation. He also stated that his irrational behavior in the courtroom was apparent to anyone who was present. As evidence of this claim, Taylor cited to many pages in the trial transcript. He also pointed to his own affidavit, the newspaper articles, the affidavits of Butz and Gatterdam, and the second affidavit of Vickers.
Taylor's argument about his competency to execute a proper waiver of his right to counsel is barred by res judicata because the evidence related to that issue is on the record. Taylor's claims regarding his psychologist's testimony and his irrational behavior in the courtroom are barred by res judicata because that evidence was within the record and such issues can be raised on direct appeal. His allegation that the trial court erred in finding him competent at the pre-trial hearing is also barred by res judicata because the evidence presented at the pre-trial hearing was in the record.
The only argument that is not barred by res judicata is Taylor's argument that the trial court should have held a later competency hearing after it had been presented with new evidence that raised a bona fide doubt about Taylor's competency. In support of that claim, Taylor cited to the newspaper articles, the affidavits of Butz and Gatterdam, and the second affidavit of Vickers.
We have reviewed the numerous newspaper articles attached to Taylor's petition. The articles question Taylor's decision to represent himself and discuss the trial proceedings. They talk about the trial "drag[ging]" on because Taylor asked "endless variations" of "often irrelevant question[s.]" The articles do not, however, contain sufficient operative facts to demonstrate that the judge was presented with new evidence that should have raised a bona fide doubt about his competency. There is no evidence that Taylor's behavior during the trial was any different than his behavior during the pre-trial and competency hearings. Thus, the newspaper articles were not sufficient evidence to entitle Taylor to an evidentiary hearing on his petition for post-conviction relief.
The affidavits of Butz, Gatterdam, and Vickers do provide information reflecting on Taylor's competency. The affidavits do not demonstrate, however, that any of the information in them was known by the trial judge. Although Taylor argued that the trial judge should have held later competency hearings after a bona fide doubt about his competency was raised, Taylor failed to prove that the judge was actually aware of the information outside of the record that he alleges should have raised a bona fide doubt in the judge's mind. Further, the vast majority of the statements in the affidavits relate to Taylor's actions prior to trial, not his actions during the trial. Thus, he did not show sufficient evidence outside of the record for an evidentiary hearing on these claims.
In this third claim, Taylor argued that "his appointed defense counsel [had] rendered ineffective assistance of counsel in such a way as to unconstitutionally coerce [him] to elect the lethal path of self-representation." He stated that his "appointed counsel provoked a rift between themselves and [himself], in part by providing unconstitutional and incorrect advice regarding his inviolate right to choose to testify at trial." He argued that but for his counsels' ineffective advice, he would not have insisted on representing himself. In support of this claim, he cited his own affidavit, the newspaper articles, the affidavits of Butz and Gatterdam, and the second affidavit of Vickers.
The newspaper articles and affidavits of Butz, Gatterdam, and Vickers do not provide any information to support this claim. Taylor's own affidavit states that he "lost trust" in his appointed counsel for the following reasons: they had once promised him that if he agreed to a continuance in his criminal case, they would also take action to continue his divorce case, but had later reneged on that promise; he had disagreed with the appointed counsel about whether he should testify at trial; and one appointed counsel had told him something that had led him to believe that they "had the power to stop [him] from testifying[.]"
While the record and Taylor's affidavit reveal that Taylor was unhappy with his appointed counsel, they do not demonstrate that the counsel somehow "coerce[d]" Taylor to represent himself. To the contrary, Gatterdam's affidavit reveals that Butz had contacted the Public Defender's Office to seek assistance in urging Taylor to accept counsel. Thus, Taylor's appointed counsel apparently wanted to represent him. Gatterdam's affidavit also reveals that Taylor had wanted to make the opening statement at trial to tell listeners "what his attorneys would not do for him[.]" Vickers' second affidavit reveals that Taylor "view[ed] the trial as a means to confront and publicly humiliate his ex-wife by airing the wrongs she allegedly had done to him." In his own affidavit, Taylor stated that he had asked the trial court to allow him to question certain witnesses while his appointed counsel questioned other witnesses, but that the trial court had refused. These affidavits suggest that Taylor's true displeasure with his attorneys was due to the fact that they would not handle his case in a manner in which he wished it to be handled. Further, although Taylor swore in his affidavit that his attorneys had made incorrect and improper statements to him, the trial court was not required to accept the credibility of Taylor's own affidavit. See Calhoun, 86 Ohio St.3d at 284, 714 N.E.2d at 911. Thus, we cannot conclude that the trial court erred in overruling this claim.
In his fourth claim, Taylor argued that he had not executed a knowing, intelligent, and voluntary waiver of his right to counsel "because the trial court failed to pursue the obvious, less drastic alternative of simply appointing different counsel in order to remedy differences which — when left without remedy — improperly forced [him] down the path of self-representation." In support of this claim, he cited to his own affidavit, the newspaper articles, the affidavits of Butz and Gatterdam, and the second affidavit of Vickers.
Although a defendant has a right to appointed counsel, he does not have a right to choose that counsel. Thurston v. Maxwell (1965),3 Ohio St.2d 92, 93, 209 N.E.2d 204, 205. [from State v. Broomfield (1988), 1998 WL 137165]Thus, the trial court did not err in denying Taylor's fourth claim.
In his fifth claim, Taylor argued that his waiver of counsel had not been knowing, intelligent, and voluntary because the trial court had incorrectly stated the potential penalties attached to the counts in the indictment. He also asserted that the trial court had incorrectly told him that, because he had waived his counsel, he would have to disclose any defense expert reports to the prosecution. Further, he stated that the trial court had failed to perceive obvious indications that he had not knowingly, intelligently, and voluntarily waived his right to counsel and cited to three incidents which occurred on the record during the trial and which supposedly demonstrated his incompetence. In support of this claim, Taylor cited his own affidavit, the newspaper articles, the affidavits of Butz and Gatterdam, and the second affidavit of Vickers. All of these claims are barred by res judicata because they can be raised on direct appeal.
In his sixth and seventh claims, Taylor argued that he had been incompetent to stand trial, to waive counsel, and to represent himself and that his conviction was void because the record revealed that he had been unable to hear and process information produced at the trial. In support of his argument, he cited to numerous pages in the trial transcript which supposedly revealed his inability to hear. He also cited to the newspaper articles, the affidavits of Butz and Gatterdam, and the second affidavit of Vickers.
The trial transcript does not constitute documentary evidence outside of the record. None of the affidavits or newspaper articles indicate that Taylor had an inability to hear. Neither Vickers nor Gatterdam, attorneys who met with Taylor, swore in their affidavits that they believed that Taylor could not process information. Butz was the only affiant to state that he believed that Taylor was incapable of rationally considering his advice and aiding in his own defense. Although we recognize Butz's experience in defending other serious felony offenders, he is not an expert on psychological matters. The trial court was not required to give credibility to that statement in his affidavit. See Calhoun, 86 Ohio St.3d at 284, 714 N.E.2d at 911. Thus, the trial court did not err in overruling Taylor's sixth and seventh claims.
In his eighth claim, Taylor argued that his conviction was void because he had been unable to make rational decisions and to conduct his own defense during his trial. He cited numerous passages in the trial transcript which allegedly were examples of "why the trial court should have rescinded [its] decision" to allow Taylor to represent himself. He also cited to his own affidavit, the newspaper articles, the affidavits of Butz and Gatterdam, and the second affidavit of Vickers.
The trial transcript is not an evidentiary document outside of the record. The newspaper articles do not provide information about Taylor's ability to make rational decisions. Although they do report some of his actions during the trial, they do not discuss his mental capacity. None of the affidavits specifically discuss Taylor's conduct during the trial. Thus, Taylor failed to submit evidentiary documents outside of the record to support this claim.
In his ninth claim, Taylor argued that his conviction was void because the trial court's actions had undermined his ability to effectively represent himself. He claimed that the trial court had refused to correct his poor jail conditions and had made rulings "that [had] raised unconstitutional and unlawful barriers" to his attempts to represent himself, such as not allowing him to call his investigator and quashing his subpoenas. In support of his argument, he cited to numerous pages in the trial transcript. He also cited to his own affidavit.
These arguments can be raised on direct appeal because they involve rulings the trial court made on the record during the trial. Thus, the trial court did not err in denying this claim.
In his tenth claim, Taylor claimed that his conviction was void because "his trial was rendered fundamentally unfair" when the trial court permitted the prosecution to argue "irrelevant, prejudicial, and unconstitutional victim-impact evidence in opening statement and in its first witness" and when the court allowed the prosecution to "clearly insinuate prior bad acts in contravention of the evidence rules and the court's duty to guard against plain error." In support of this claim, he cited to all of the exhibits attached to his petition.
These arguments are barred by res judicata because they can be raised on direct appeal. Thus, the trial court properly denied this claim.
In his eleventh claim, Taylor argued that his trial was fundamentally unfair because "the evaluating psychologists did not have equal access to facts and documents * * * upon which to premise their opinions about [his] competency and insanity." Specifically, he asserted that the state and court-appointed psychologists had had access to many police documents to which his psychologists had not had access. In support of this assignment, he cited to all of the exhibits attached to his petition.
None of the exhibits attached to his petition provide any support for this claim. Thus, the trial court properly overruled it.
In his twelfth claim, Taylor claimed that his conviction was void because his trial record was too incomplete to allow him to have meaningful post-conviction review. He asserted that the trial court had stated, on the record, that it had intended to ensure that all matters were properly on the record. Taylor argued, however, that there had been a number of unrecorded sidebars during trial. In support of his argument, he cited numerous pages in the trial transcript.
Taylor does not indicate what matters were discussed in any of the unrecorded sidebars. The mere fact that a sidebar was unrecorded is not proof that crucial information is not in the record. Sidebars are commonly held to discuss general court maintenance issues such as when the next break will take place or when the case will recess for the day. Considering Taylor's lack of legal knowledge, we imagine that the judge held many non-recorded sidebars merely to inform Taylor of proper court procedure and to educate him on the Rules of Evidence and the Rules of Criminal Procedure. Because the judge stated that he would ensure that all matters were properly on the record and because Taylor had standby counsel who could have objected had they believed important sidebar conferences were not being recorded, we believe that any error that could have resulted from the non-recorded sidebars is harmless. See State v. Brewer (Aug. 26, 1988), Greene App. No. 87-CA-67, unreported, affirmed (1990), 48 Ohio St.3d 50, 549 N.E.2d 491.
In his thirteenth claim, Taylor argued that his conviction was void because the trial court had erred in its instructions to the jury during the culpability phase of his trial. In support of this argument, he cited the trial transcript. This claim is barred by res judicata because it can be raised on direct appeal.
In his fourteenth claim, Taylor asserted that his conviction was void because Ohio's post-conviction process is inadequate. We found this argument to be unpersuasive under Taylor's first assignment of error, supra.
In his fifteenth claim, Taylor asserted that his conviction was void due to the cumulative effects of all of the errors and omissions during his trial. Taylor raises this issue in his third assignment of error, infra. For the same reasons we discuss below, the trial court did not err in overruling it.
The second assignment of error is overruled.
 III. CONSIDERED TOGETHER, THE CUMULATIVE ERRORS SET FORTH IN APPELLANT'S SUBSTANTIVE GROUNDS FOR RELIEF MERIT REVERSAL OR REMAND FOR A PROPER POST[-]CONVICTION PROCESS.
Taylor argues that the cumulative errors during his trial deprived him of his constitutional right to a fair trial.
The supreme court has recognized the doctrine of cumulative error. State v. Garner (1995), 74 Ohio St.3d 49, 64, 656 N.E.2d 623, 637, certiorari denied (1996), 517 U.S. 1147, 116 S.Ct. 1444; State v. DeMarco (1987), 31 Ohio St.3d 191, 509 N.E.2d 1256, paragraph two of the syllabus. Pursuant to that doctrine, a conviction will be reversed if the cumulative effect of errors in the trial deprived the defendant of the constitutional right to a fair trial even though the instances of trial court error did not individually constitute cause for reversal. Garner, 74 Ohio St.3d at 64, 656 N.E.2d at 637.
The doctrine of cumulative error applies to errors that occurred during the trial. As such, it is an issue that can be raised on direct appeal. Thus, the trial court properly concluded that it is barred by res judicata.
The third assignment of error is overruled.
 IV. THE TRIAL COURT ERRED BY FAILING TO GRANT APPELLANT'S OHIO R. CIV. P. 60(B)(5) MOTION FOR RELIEF FROM JUDGMENT.
Taylor argues that the trial court erred in overruling his Civ.R. 60(B) motion for relief from judgment.
In his motion for relief from judgment, Taylor argued that although he had "made several attempts" to obtain his records from the Greene County Jail, they had not been released to him until after the trial court had denied his petition for post-conviction relief. In his motion, he alleged that had he had the jail records before he filed his petition, he would have been able to support his petition with sufficient evidence outside of the record to demonstrate that his constitutional rights were violated. Specifically, he alleged that his jail records constituted evidence outside of the record to support his claims of incompetency and to show the breakdown of his attorney-client relationship.
We have reviewed Taylor's jail records. The records indicate that Taylor had some health problems while in jail and that the jail authorities suspected possible suicide attempts, but that Taylor had denied attempting suicide. Such information does not demonstrate that Taylor was incompetent. Further, the only reference to Taylor's attorney-client relationship contained in the jail records is a report that Taylor had stopped taking his medicine "`in protest of [his] attorneys lying to [him].'" Such information is not sufficient evidence that his attorneys' conduct violated his constitutional rights. Thus, the trial court did not err in overruling Taylor's motion for relief from judgment.
The fourth assignment of error is overruled.
 _____________ WOLFF, P. J.
FAIN, J. and YOUNG, J., concur.
[1] Taylor was not fully represented by counsel at trial, but instead represented himself and had standby counsel. Because he was not fully represented at trial, the doctrine of res judicata may not bar him from raising in this petition for post-conviction relief any defense or claimed lack of due process that could have been raised at trial. During oral argument before our court, Taylor's attorney stated that Taylor does have legal counsel representing him on his direct appeal to the supreme court. Thus, the doctrine of res judicata would bar him from raising in this petition for post-conviction relief any defense or claimed lack of due process that can be raised in his direct appeal from his conviction.