OPINION
{¶ 1} Defendant-Appellant Frank Cunningham appeals from his conviction and sentence for Aggravated Murder, with a firearm specification, and for Having a Weapon Under Disability (WUD). On appeal Cunningham presents five assignments of error, arguing that: (1) his Aggravated Murder conviction is against the manifest weight of the evidence and there is insufficient evidence to support that conviction; (2) he was denied the effective assistance of trial counsel; (3) the trial court should have allowed his request for new counsel; (4) his confession at the police station should have been suppressed; and (5) his sentence for the WUD conviction is in excess of the range permitted by statute.
 {¶ 2} After reviewing the record, we find that Cunningham's conviction is supported by sufficient evidence and that it is not against the manifest weight of the evidence. We conclude that Cunningham received effective assistance from trial counsel, that the trial court did not abuse its discretion in denying Cunningham's motion for substitution of counsel, and that the court did not err in overruling Cunningham's motion to suppress his confession given at the station. Finally, the record does not portray the claimed sentencing error. Although the trial court stated its intention, at the sentencing hearing, to impose a five-year sentence for WUD, the termination entry actually imposes a one-year sentence, which is within the sentencing range permitted by the statute.
 {¶ 3} The judgment of the trial court is Affirmed.
 I {¶ 4} On the morning of March 9, 2004, police received a call from Cunningham's mother reporting that her son had called her and told her that he had "messed up" and shot someone. She did not know where he was calling from, but she convinced him to come home. On the way home, Cunningham stopped briefly at a friend's home, where he again stated that he had messed up. He did not tell his mother or his friend that the shooting was an accident. Cunningham soon arrived home, with the police arriving shortly thereafter.
 {¶ 5} For nearly an hour and a half, Cunningham remained in the stairway inside his home talking with officers. For much of that time, he held a gun to his head. Cunningham offered a lot of information to the officers. He admitted that he had shot and killed "John," with whom he used to work, but he was unable to provide a last name. At first, the officers did not know who Cunningham was talking about, but eventually he gave clear directions to the victim's home. Cunningham interrupted his conversation with police in order to speak briefly with both his ex-girlfriend and his cousin on the telephone, telling them both that he had messed up. He did not tell either of them that the shooting was an accident. Eventually, he laid down his gun and surrendered to the police.
 {¶ 6} While two officers were continuing to talk with Cunningham in his home, other officers went to John Lemley's home, where they met Lemley's sister. When she escorted them to her brother's apartment, the police found Lemley dead on his sofa. He had been shot twice, once in the head and once in the chest. A third round had barely missed him, lodging in a pillow near his body.
 {¶ 7} Officers took Cunningham to the station for questioning. Once there, Cunningham was read his rights underMiranda v. Arizona (1966), 384 U.S. 436, which he waived. He proceeded to admit on videotape that he had killed Lemley. Neither at his home nor in the station did Cunningham claim that the shooting was accidental.
 {¶ 8} Cunningham explained that on the morning of the shooting, rather than appearing in court as ordered to face rape charges, he decided to go to visit his ex-girlfriend to discuss those charges. Despite knowing that he was not legally permitted to carry a weapon, Cunningham chose to carry a gun with him. On the way to his ex-girlfriend's house, Cunningham stopped at Lemley's home, ostensibly to use his telephone. Although Lemley had no phone, Cunningham stayed to visit.
 {¶ 9} Cunningham told police that he asked Lemley why Lemley had gotten him fired. Lemley told him that being fired was his own fault and that he deserved to be fired. In response, Cunningham drew his gun and shot once, missing Lemley. He then fired two more shots hitting Lemley first in the chest and then in the head.
 {¶ 10} Cunningham admitted that he blamed Lemley for his being fired from a job nearly a year prior to the murder. While Cunningham claimed to have forgiven Lemley, other witnesses testified that Cunningham had remained very upset with Lemley throughout the year since he was fired, repeatedly speaking angrily of Lemley. In fact, Cunningham's ex-girlfriend heard him threaten to kill Lemley.
 {¶ 11} The first time that Cunningham told anyone that the shooting was an accident was a month after the shooting. On the day of trial, Cunningham said that when he took his gun out to show Lemley, the gun accidently discharged twice, hitting Lemley once in the chest. Cunningham stated that he turned the gun on himself, but the gun jammed, so he crossed the room to help Lemley. As he leaned over Lemley to help him, the gun went off a third time, hitting Lemley in the head, killing him.
 {¶ 12} Cunningham was indicted on one count of Aggravated Murder, with a firearm specification, and one count of Having a Weapon Under Disability. He filed a motion to suppress his confessions, which the trial court overruled. A jury found Cunningham guilty as charged, and the trial court sentenced him to consecutive sentences of life (with the possibility of parole after 20 years) for the Aggravated Murder conviction, three years for the firearm specification, and one year for the WUD conviction.
 {¶ 13} Cunningham appeals from his conviction and sentence.
 II {¶ 14} Cunningham's First Assignment of Error is as follows:
 {¶ 15} "DEFENDANT-APPELLANT'S CONVICTION FOR AGGRAVATED MURDER (WITH FIREARM SPECIFICATION) WAS BASED ON INSUFFICIENT EVIDENCE AND WAS CONTRARY TO THE MANIFEST WEIGHT OF THE EVIDENCE PRESENTED TO THE COURT."
 {¶ 16} In his First Assignment of Error, Cunningham argues that his conviction for Aggravated Murder is not supported by sufficient evidence and that it is against the manifest weight of the evidence. Specifically, he insists that there is no evidence of prior calculation and design. We conclude, based on all of the evidence presented, that a reasonable jury could infer prior calculation and design.
 {¶ 17} A sufficiency of the evidence argument challenges whether the State has presented adequate evidence on each element of the offense to allow the case to go to the jury or to sustain the verdict as a matter of law. State v. Thompkins,78 Ohio St.3d 380, 387, 1997-Ohio-52. The proper test to apply to such an inquiry is the one set forth in paragraph two of the syllabus ofState v. Jenks (1991), 61 Ohio St.3d 259, 574 N.E.2d 492: "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." In contrast, when reviewing a judgment under a manifest weight standard of review, "[t]he court reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [factfinder] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which evidence weighs heavily against the conviction." Thompkins, supra, quoting State v. Martin
(1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717.
 {¶ 18} Cunningham admitted heading to his ex-girlfriend's house with a gun, and that he probably would have shot her when he got there. On the way, he stopped at Lemley's home. At trial Cunningham claimed that the shooting was an accident. However, on the day of the murder, he told his mother, his friend, his ex-girlfriend, his cousin, and several police officers that he had shot Lemley, without ever saying that it was an accident. Instead, what he did say to his ex-girlfriend was that she was lucky, because he had been heading to her house to shoot her that morning.
 {¶ 19} Cunningham admitted to the police on two separate occasions that he shot Lemley because he believed that Lemley was to blame for his being fired. Witnesses described Cunningham's lingering anger with Lemley. Additionally, Cunningham's ex-girlfriend heard him threaten to kill Lemley in the past.
 {¶ 20} Moreover, Cunningham did not fire the gun just once, but three times. Twice he hit Lemley in vital areas, either of which could have caused his death. While Cunningham insisted at trial that the gun had gone off on its own, testing of the weapon revealed several functional safety devices.
 {¶ 21} A review of all of the evidence demonstrates that the State offered sufficient evidence of the Aggravated Murder of John Lemley to send the matter to the jury. Furthermore, there is no reason to conclude that the jury lost its way and that Cunningham's conviction is against the manifest weight of the evidence. That Cunningham's intent to kill Lemley was the product of prior calculation and design is a reasonable inference from the evidence adduced at trial.
 {¶ 22} Cunningham's First Assignment of Error is overruled.
 III {¶ 23} Cunningham's Second Assignment of Error is as follows:
 {¶ 24} "DEFENDANT-APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF LEGAL COUNSEL DURING THE PRETRIAL AND TRIAL PHASES OF THE MATTER BEFORE THE COURT."
 {¶ 25} In his Second Assignment of Error Cunningham claims that his trial counsel was ineffective. Specifically, he presents five arguments. First, he maintains that counsel was required to move to suppress not only his videotaped confession, but also his spontaneous statements made during the stand-off in his home. Second, Cunningham alleges that counsel should have objected more strenuously to the mentioning by State's witnesses of his pending rape charge. Next, he argues that counsel should have challenged a prospective juror for cause or used a peremptory challenge. Fourth, Cunningham insists that counsel was ineffective because he had not called all of the witnesses that Cunningham wanted him to call. Finally, he briefly contests counsel's trial preparation. However, our review of the record persuades us that Cunningham was represented by experienced, competent counsel.
 {¶ 26} In order to prevail on a claim of ineffective assistance of counsel, a defendant must show both deficient performance and resulting prejudice. Strickland v. Washington
(1984), 466 U.S. 668, 104 S.Ct. 2052. To show deficiency, the defendant must show that counsel's representation fell below an objective standard of reasonableness. Id. Trial counsel is entitled to a strong presumption that his conduct falls within the range of effective assistance. Id. The adequacy of counsel's performance must be viewed in light of all of the circumstances surrounding the trial court proceedings. Id. Hindsight may not be allowed to distort the assessment of what was reasonable in light of counsel's perspective at the time. State v. Cook (1992),65 Ohio St.3d 516, 524, 605 N.E.2d 70.
 {¶ 27} Even if counsel's performance is shown to have been deficient, the defendant must still show that the deficient performance had an effect on the judgment. State v. Bradley
(1989), 42 Ohio St.3d 136, 142, 538 N.E.2d 373. Reversal is warranted only where the defendant demonstrates that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. Id.
 {¶ 28} Cunningham first maintains that counsel was obligated to move to suppress the statements that he volunteered to officers during the stand-off at his home. Trial counsel stated that he had no good-faith basis to file a motion to suppress Cunningham's initial statements to the officers. Volunteered statements, not the product of custodial interrogation, are not ordinarily subject to suppression. In re Staugler (May 17, 2002), Miami App. No. 2001 CA 33, citing State v. Brewer
(1990), 48 Ohio St.3d 50, 549 N.E.2d 491, cert. denied (1990),498 U.S. 881, 111 S.Ct. 218. We agree with trial counsel's assessment, on the record, that there was no basis to seek the suppression of Cunningham's voluntary statements.
 {¶ 29} Cunningham also alleges that counsel was ineffective because he did not object effectively to testimony from the State's witnesses regarding his pending rape charge. The record reveals that trial counsel filed a liminal motion regarding this testimony, and that he renewed this motion at trial. There were several sidebars during which the trial court consistently ruled that no details were to be revealed. In fact, the only details revealed were those that Cunningham offered during his own testimony. The pendency of the rape charge was a necessary element of the WUD conviction. Because counsel did repeatedly object to any details of the charge being revealed to the jury, we conclude that he did represent Cunningham effectively in this regard.
 {¶ 30} Next, Cunningham maintains that because a juror had read a newspaper article about the case, counsel should have either challenged her for cause or used a peremptory challenge to excuse her. The record reveals that the trial court ascertained that the juror had no recollection of any of the details in the article. Additionally, she agreed that the article would have no affect on her ability to listen to the evidence and judge the case based on that evidence. Thus, any challenge for cause would likely have been futile. Moreover, when defense counsel, in the exercise of his professional judgment, elects not to exercise a peremptory challenge to excuse a particular juror, that decision is not a basis for ineffective assistance of counsel. State v.Groves (June 19, 1989), Warren App. No. CA88-11-082.
 {¶ 31} Cunningham also claims that counsel was ineffective because he had decided not to call all of the witnesses that Cunningham thought he should. In support, Cunningham refers to just one witness, Mr. Gonzales. Counsel explained that he had spoken with the witness and had concluded that his testimony was either repetitive of other testimony or irrelevant to the charges. Nevertheless, assuming that the witness was crucial to his case, as Cunningham maintains, the fact is that the trial court allowed the defense to reopen its case and call the witness. Therefore, there was no prejudice to the defense.
 {¶ 32} Finally, Cunningham presents a cursory claim that counsel failed to adequately review the discovery materials with him prior to trial. Counsel represented to the court that he had visited with Cunningham in jail more than a dozen times, and that he had shared the discovery during those visits. Thus, the record does not bear out Cunningham's claim.
 {¶ 33} Cunningham's Second Assignment of Error is overruled.
 IV {¶ 34} Cunningham's Third Assignment of Error is as follows:
 {¶ 35} "THE TRIAL COURT ERRED IN DENYING DEFENDANT-APPELLANT'S REQUEST FOR SUBSTITUTION OF COUNSEL DURING THE TRIAL OF THE MATTER BEFORE THE COURT."
 {¶ 36} Here, Cunningham insists that the trial court abused its discretion by denying his motion for substitution of counsel made at the end of his case-in-chief. The trial court conducted a thorough inquiry concerning Cunningham's reasoning before denying his motion. We conclude that the trial court did not abuse its discretion in denying the motion.
 {¶ 37} When considering a request for new counsel, a trial court must balance the public's interest in prompt and efficient administration of justice against any potential prejudice to the movant. State v. Unger (1981), 67 Ohio St.2d 65, 67. A denial of a motion for substitution of counsel will only be reversed when the trial court has abused its discretion. State v.McNeill (1988), 83 Ohio St.3d 438, 452.
 {¶ 38} Cunningham's original motion was to discharge his assigned counsel and proceed pro se. During the course of the court's extensive questioning of Cunningham's reasoning, this request evolved into a request for new counsel. Either way, Cunningham offered only vague reasons for his request, the most important of which was his dismay that a particular witness had not been called on his behalf. The court explained that most of Cunningham's complaints were unfounded and that he was asking for the admission of some evidence that was not admissible in the form in which he wished it offered, but that was offered in another, admissible form. Moreover, the court did allow counsel to re-open the defendant's case in order to call the requested witness.
 {¶ 39} Particularly, in light of the late timing of the request for new counsel, we cannot conclude that the trial court abused its discretion in denying the motion after a thorough inquiry into Cunningham's reasons. Because the trial court did not abuse its discretion in denying Cunningham's request for new counsel, his Third Assignment of Error is overruled.
 V {¶ 40} Cunningham's Fourth Assignment of Error is as follows:
 {¶ 41} "THE TRIAL COURT ERRED IN DENYING DEFENDANT-APPELLANT'S MOTION TO SUPPRESS OUT-OF-COURT STATEMENTS."
 {¶ 42} In his Fourth Assignment of Error, Cunningham alleges that the trial court erred in refusing to suppress his custodial confession because it was not knowingly, voluntarily, and intelligently made. In support, he points to his statements that he had not slept in two days and that he had been drinking heavily and smoking marijuana during that time. We have reviewed the videotaped confession, and we conclude that the evidence supports the trial court's finding of a knowing, voluntary, and intelligent confession.
 {¶ 43} When deciding a motion to suppress evidence, an appellate court is bound to accept the trial court's factual findings if they are supported by competent and credible evidence, and the appellate court must then independently determine as a matter of law if the minimum constitutional standard has been met. State v. Williams (1993),86 Ohio App.3d 37, 41, 619 N.E.2d 1141. Moreover, police officers need not go into "sweeping inquiries into the state of mind of a criminal defendant who has confessed, inquiries quite divorced from any [police] coercion brought to bear on the defendant." Colorado v.Connelly (1986), 479 U.S. 157, 107 U.S. 515.
 {¶ 44} While it is apparent from the videotape that Cunningham was tired, and he did exhibit some twitching of his head, these behaviors alone were not enough to vitiate either his waiver of his rights, or the voluntariness of his confession. Cunningham spoke clearly and coherently, and he had no trouble following the officer's inquiries throughout the relatively brief period of questioning. Cunningham was offered, and was provided, food and drink, and he was given more than one opportunity for a break. Accordingly, we agree with the trial court's assessment that although Cunningham may have been tired during the interrogation, there is nothing on the videotape to show either that the police were the cause of his discomfort, or that his faculties were so overwhelmed, as a result, that his statement was other than voluntarily made.
 {¶ 45} For these reasons, we find that Cunningham's confession was knowingly, voluntarily, and intelligently made, and the trial court did not abuse its discretion in denying his motion to suppress. Cunningham's Fourth Assignment of Error is overruled.
 VI {¶ 46} Cunningham's Fifth Assignment of Error is as follows:
 {¶ 47} "THE TRIAL COURT ERRED IN SENTENCING THE DEFENDANTA-PPELLANT FOR A TERM OF FIVE YEARS IMPRISONMENT FOR HAVING A WEAPON WHILE UNDER DISABILITY."
 {¶ 48} In his Fifth Assignment of Error, Cunningham seeks clarification regarding the sentence for his Weapons Under Disability conviction. At his sentencing hearing the trial court announced that Cunningham would serve five years for the WUD conviction, and that this sentence would be served consecutively to his other sentences. Apparently becoming aware, after the hearing, of a recent update to R.C. § 2913.13 that made Weapons Under Disability a fifth-degree felony rather than a third-degree felony, the trial court corrected the sentence in its journal entry by imposing a consecutive one-year sentence. A trial court speaks through its journal entries, so it is the one-year sentence that Cunningham must serve, not the five-year sentence.State v. King, 70 Ohio St.3d 158, 162, 1994-Ohio-412, citation omitted. Accordingly, we find no sentencing error.
 {¶ 49} Cunningham's Fifth Assignment of Error is overruled.
 VII {¶ 50} All of Cunningham's assignments of error having been overruled, the judgment of the trial court is Affirmed.
Grady, P.J. and Donovan, J., concur.